UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GOLD COAST PARTNERS, LLC | ) | Case No. 18-09765 |
| | ) | |
| Debtor and Debtor-in-Possession | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | Chapter 11 |

## **DEBTOR'S PLAN OF REORGANIZATION**

Gold Coast Partners, LLC, Debtor herein ("Debtor"), by and through its attorney, proposes the following Plan of Reorganization ("Plan") in accordance with Section 1121(a) of the Bankruptcy Code.

## **PREAMBLE**

On April 3, 2018, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). The Debtor is operating its business and managing its financial affairs as Debtor-in-Possession pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case. The Debtor is the operator of three (3) coin-operated laundromats in the City of Chicago. The laundromats are operated at 5527 West North Ave., Chicago, IL d/b/a JR Coin Laundry ("North"), 3159 West Roosevelt Rd, Chicago, IL d/b/a/ Fast Wash ("Roosevelt"), and 4258 West Madison St., Chicago, IL d/b/a Spin Cycle on Madison ("Madison", collectively, "Properties"). The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized by the Debtor from post-petition earnings as well as from cash on hand. For a further discussion of the Plan, the reader's attention is directed to the Disclosure Statement filed by the Debtor in connection with

this Plan.

# ARTICLE I
# DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1** **Administrative Expense:** A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.2** **Allowed Claim:** A "Claim" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent in the Debtor's bankruptcy schedules filed in this Chapter 11 case, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

**1.3** **Bankruptcy Code:** Title 11 of the United States Code, Section 101 *et seq.*, as amended.

**1.4** **Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.5** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**1.6** **Chapter 11:** Chapter 11 of the Bankruptcy Code.

**1.7** **Chapter 11 Case:** This case filed by the Debtor pursuant to Chapter 11 of the

2

Bankruptcy Code.

**1.8** **Claim:** The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.9** **Confirmation:** The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.10** **Debtor:** Gold Coast Partners, LLC

**1.11** **Debtor's Estate:** All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.12** **Debtor in Possession:** Gold Coast Partners, LLC

**1.13** **Disclosure Statement:** The Disclosure Statement including any amendments or modifications thereto.

**1.14** **Effective Date:** Thirty (30) days following the date on which the Order confirming this Plan becomes a Final Order.

**1.15** **Final Confirmation Order:** Final Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.16** **Final Order:** (i) An order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek re-argument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, re-argument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, re-argument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for re-argument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration,

3

rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

1.17 **Month:** A calendar month, including the month in which a date or event occurs.

1.18 **Plan:** This Plan of Reorganization including any amendments or modifications thereto.

1.19 **Pro-rata:** With respect to any distribution on account of any Claim in the same proportion as the amount of such Claim bears to the aggregate amount of all Claims of its class.

1.20 **Unclassified Claims:** Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined in this Plan, the words and phrases used herein shall have the meanings ascribed to them in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## UNCLASSIFIED CLAIMS

The following Unclassified Claims exist under the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code:

2.1 **Administrative Claims:** Administrative Claims shall consist of Allowed Claims for Administrative Expenses as well as Claims arising under Sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code.[1]

## ARTICLE III
## CLASSIFICATION OF CLAIMS

3.1 **Class 1:** The Allowed Claims of the Internal Revenue Service ("IRS"), the

---

[1] Since the Debtor's Chapter 11 Case was commenced as a voluntary proceeding, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

4

Illinois Department of Revenue ("IDR"), the Illinois Department of Employment Security ("IDES") and any other federal, state or local taxing authority, other than real estate taxes, which are entitled to priority under Section 507(a)(8) of the Bankruptcy Code ("Priority Claims").

**3.2** **Class 2**: The Allowed Secured Claim of Alliance Laundry Systems, LLC ("Alliance").

**3.3** **Class 3**: The Allowed Secured Claim of Dexter Financial Services, Inc. ("Dexter").

**3.4** **Class 4**: The Allowed Secured Claim of City of Chicago, Department of Finance, Bureau of Utility Billing ("Chicago Water").

**3.5** **Class 5:** The Allowed Claims of general unsecured creditors ("Unsecured Claims"), including unsecured claims of taxing bodies.

## ARTICLE IV
## PAYMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

Under the terms of the Plan, Unclassified Claims are unimpaired and shall be paid as follows:

**4.1** **Administrative Claims:** Except as expressly provided herein and except as may be agreed to by the holder of each Allowed Administrative Claim, holders of Allowed Administrative Claims shall be paid on the Effective Date in cash in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, as follows, unless the holder of an Administrative Claim agrees to a different treatment:

Each holder of an Allowed Administrative Claim of the kind specified in Section 507(a)(2) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, on the Effective Date except that post-petition creditors of the

Debtor will be paid according to the terms under which the debt was incurred; and provided, however, that all Administrative Claims with respect to the payment of any professional person shall remain subject to and be paid in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules and the Final Order of the Bankruptcy Court.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 1 through 5 are impaired.

**6.1 Class 1**:   In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Claims in Class 1, the Priority Claims shall be paid in full, with interest at the rate of 5.00% per annum, in monthly payments over sixty (60) months from the Petition Date, beginning thirty (30) days after the Effective Date. This Class is impaired under the Plan. The total amount of the Priority Claims is $7,353.63 ($6,875.69 to IRS and $477.94 to IDES). The monthly payment will be $163.00.

**6.2 Class 2**:   In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured Claim in Class 2, Alliance shall be paid $600,240.95, with interest at the rate of 7.24% per annum, in monthly installments over a period of ninety-six (96) months from the Effective Date, commencing thirty (30) days after the Effective Date.   The monthly payment will be $8,255.00.   These payments will satisfy Alliance's lien on the Debtor's assets scheduled in the Petition and Alliance shall release its lien on the assets upon completion of the payments or upon sale of the assets to which the lien may attach, whichever may occur earlier.

This Class is impaired under the Plan.

**6.3 Class 3:**   In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured Claim in Class 3, Dexter shall be paid $120,055.59, with interest at the rate of 6.49% per annum, in monthly installments over a period of seventy-five (75) months from the Effective Date, commencing thirty (30) days after the Effective Date. The monthly payment will be $1,958.14. These payments will satisfy Dexter's lien on the Debtor's assets scheduled in the Petition and Dexter shall release its lien on the assets upon completion of the payments or upon sale of the assets to which the lien may attach, whichever may occur earlier. This Class is impaired under the Plan.

**6.4 Class 4:**   In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured Claim in Class 4, Chicago Water shall be paid $63,261.53, with interest at the rate of 5.00% per annum, in monthly installments over a period of sixty (60) months from the Effective Date, commencing thirty (30) days after the Effective Date. The monthly payment will be $1,194.00. These payments will satisfy Chicago Water's lien on the Properties in which the Debtor operates its businesses. Upon full payment of Chicago Water's claims in Class 4, Chicago Water shall release its lien on the Properties or upon sale of the Properties to which the lien may attach, whichever may occur earlier. This Class is impaired under the Plan.

**6.5 Class 5:**   In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claims in Class 5, Unsecured Claims shall be paid, pro-rata, ten (10%) percent of the Allowed Unsecured Claims, with no interest, in monthly installments over a period of sixty (60) months commencing thirty (30) days after the Effective

Date. The total amount of Allowed Unsecured Claims is derived from a review of Schedule F filed by the Debtor and the claims register. The total amount of Allowed Unsecured Claims is $255,480.88, including the unsecured amount of the IRS claim. The total amount to be paid pursuant to the Plan is $25,548.09. The monthly payment will be $425.80. This Class is impaired under the Plan.

In addition to the foregoing, in the event the Debtor, Tracey Brooks and Luke Holloway are entitled to any recovery from KMAK, LLC in connection with the litigation referenced in the Disclosure Statement, then the recovery will be apportioned between the Debtor, Tracey Brooks and Luke Holloway and the recovery by the Debtor will be an additional distribution to Allowed Unsecured Claims.

## ARTICLE VII
## IMPLEMENTATION OF PLAN

**7.1** The Debtor intends to continue operating its business to earn income from post-petition earnings sufficient to make the Plan payments.

**7.2** Upon Confirmation, the Debtor shall be vested with its assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to operate and manage its financial affairs without further Order of this Court as set forth in the Plan.

**7.3** Notwithstanding Confirmation, an injunction under Sections 362 and 524 of the Bankruptcy Code shall remain in effect to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan. This injunction shall remain in full force and effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan or until further order of Court.

The provisions contained herein are applicable so long as the Debtor is in full compliance with the provisions of any confirmed Plan.

**7.4** Management of the Debtor will remain unchanged after Confirmation of the Plan and Tracey Brooks shall be the disbursing agent for the payments required under the Plan.

**7.5** After Confirmation of the Plan, the Debtor will operate its business in the ordinary course. Payments to creditors pursuant to the Plan will be made from funds realized from post-petition earnings, from existing cash deposits, and cash resources of the Debtor.

**7.6** The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty.

**7.7** The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

**7.11** Quarterly payments to the U.S. Trustee will continue to be made by the Debtor until the Case is converted, dismissed or closed.

## ARTICLE VIII
## EXECUTORY CONTRACTS

**8.1** Any executory contracts or unexpired leases not previously assumed shall be rejected.

On August 7, 2015, the Debtor entered into a lease with Madison & Kildare, LLC to lease Madison. The term of the lease commenced October 1, 2015, and ends September 30, 2020, with an option to extend the lease term for two additional five year terms. The current base rent is $7,500.00 per month.

On November 17, 2015, the Debtor entered into a commercial lease agreement with 5527 North Ave., LLC to lease North. The term of the lease commenced November 22, 2015, and ends on November 30, 2020, with an option to extend the lease term for an additional five years. The base rent is $8,266.00 per month.

On February 19, 2016, the Debtor entered into a commercial lease with CCS Chicago Recreation, Inc. to lease Roosevelt. The term of the lease commenced February 11, 2016, and ends February 10, 2026, with an option to extend the lease term for two additional five year terms. The current base rent is $7,803.00 per month.

The Debtor expects to obtain authority from the Court to assume the lease on Roosevelt on October 3, 2018. The pre-petition arrearage due the landlord on the Roosevelt lease will be paid in accordance with the order authorizing the assumption. The Debtor will be filing a motion for authority to assume the leases on Madison and North. The pre-petition arrearages due the landlords on the Madison and North leases will be paid in accordance with the order authorizing the assumption.

## ARTICLE IX
## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

**9.1** The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i) hear and determine applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear and determine objections to Claims filed in this Chapter 11 case; (iv) resolve disputes regarding interpretation of this Plan; (v) allow Administrative Claims; (vi) enter Orders to further consummation of the Plan; (vii) approve modification of the Plan upon motions brought before the Bankruptcy Court in accordance with Section 1127 of the Bankruptcy Code; (viii) hear and determine all applications and motions pending before the Bankruptcy Court on the date of Confirmation or such other matters as are commenced after Confirmation of the Plan; (ix) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as may be necessary; (x) enforce terms of Plan; (xi) hear and determine all matters brought by the Debtor under this Plan; (xii) enter an Order concluding and terminating this Chapter 11 case; and (xiii) hear and determine any and all matters brought before the Bankruptcy Court by the Debtor after Confirmation.

## ARTICLE X
## INVALIDATION OF LIENS AND DISCHARGE

**10.1** The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. The property owned by the Debtor at the date of filing of the Chapter 11 Case, which stands as collateral for the Allowed Secured Claim, shall remain subject to the liens until such time as the amount of the Allowed Secured Claim has been fully satisfied. Subject to the provisions contained herein, the

distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all liens and Claims against any of the assets or properties of the Debtor and Debtor's Estate. Except as stated herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any lien or Claim against the Debtor or its property. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: discharge the Debtor from all Claims, demands, liabilities, other debts and Interests that arose on or before the Petition Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan. This provision of the Plan is intended to include the full breadth of the discharge provided for and permitted under Section 1141 of the Bankruptcy Code.

## ARTICLE XI
## INTEREST AND PENALTIES

**11.1**  Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after April 3, 2018, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE XII
## CONFIRMATION OF PLAN UNDER
## SECTION 1129(b) OF THE BANKRUPTCY CODE

**12.1**  To the extent necessary pursuant to Section 1129(b) of the Bankruptcy

Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met. Tracey Brooks and Luke Holloway will contribute the sum of $2,500 to purchase their membership interests in the Debtor. The Debtor will offer the Member's Interests for sale by publishing in the Chicago Sun-Times an advertisement for the purchase of the Member's Interests. The Debtor expressly reserves all of its rights with respect to such a sale, including the right to amend this Plan.

## ARTICLE XIII
## UNCLAIMED PROPERTY

**13.1** In the event that any distribution made to a claimant by the Debtor under this Plan remains unclaimed sixty (60) days after such distribution is made, this distribution shall become property of the Debtor and shall not be recouped by any claimant in subsequent distributions. Once the distribution becomes unclaimed under this provision of the Plan, the claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE XIV
## GENERAL PROVISIONS

**14.1** **Rules of Construction.** The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

**14.2** **Definitions.** A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**14.3** **Amendment and Modification.** The Debtor may alter, amend or modify the

Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**14.4** **Severability.** Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**14.5** **Successors and Assigns.** The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of any such person or entity.

**14.6** **Headings.** The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**14.7** **Effect of Appeals.** Unless the Confirmation Order is stayed pending appeal, the Debtors may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**14.8** **Debtor's Corporate Existence.** The Debtor's corporate existence shall survive and be unaffected by Confirmation of this Plan except to the extent provided in the Plan.

**14.9** **Computation of Time.** Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**14.10** **Insurance Preservation.** Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

**14.11    Assignment of Licenses and Insurance.**  Any and all licenses of the Debtor and any and all insurance policies, contracts, rights and coverages shall be deemed assigned to and for the benefit of the Debtor upon Confirmation of the Plan

**14.12    Terms Binding.**  On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtors, all creditors and shareholders and all other entities that are affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of the Final Confirmation Order.

**14.13    Inconsistencies.**  In the event that there is any inconsistency between the Plan and Disclosure Statement, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

**14.14    Compliance With Applicable Law.**  It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws and any rules and regulations promulgated thereunder.  If the Debtor concludes that the Plan may not comply with applicable law, then in such event the Debtor intends to amend the Plan in such respect as it deems necessary to bring the Plan into compliance therewith.

**14.15    Tax Consequences.**  At this time, it is uncertain as to what tax consequences, if any, may exist under the Plan with respect to the Debtor and its creditors.

        Respectfully submitted,

        Gold Coast Partners, LLC,
        Debtor/Debtor-in-Possession

        By: /s/ Joel A. Schechter
        Its Attorney

Joel A. Schechter
Attorney No. 3122099
Law Offices of Joel A. Schechter
53 West Jackson Blvd., Suite 1522
Chicago, IL 60604
312-332-0267