## COMMERICAL LEASE

THIS LEASE made and entered into this __9__ day of __FEB__ 20__16__, by and between __CCS CHICAGO RECREATION INC__, as agent for owner and __TRACEY BROOKS / GOLD COAST PARTNERS PERSONNEL AND HC MGR LLC__ as tenants.

### WITNESSETH:

### ARTICLE I
### PREMISES AND TERM

Premises:

For and in consideration of the Tenant to pay rental and other sums herein provided for (all of which shall be considered as additional rent) landlord hereby leases to Tenant those certain premises (the "Premises") designated as Illinois consisting of a

BUILDING AND LAND
__3159 W Roosevelt Rd__
__Chicago IL 60612__

Term:

The term of this Lease shall be for a period of __120__ months commencing (the Commence-Date") __FEBRUARY 11, 2016__, and ending __February 10, 2026__

### PRIOR OBLIGATIONS

If the Premises are delivered to Tenant prior to the Commencement Date, Tenant shall observe and perform all of its obligations under this Lease from the date the Premises are so delivered until the Commencement Date. Tenant shall be solely responsible for obtaining all necessary licenses and permits for its use and occupancy of the Premises.

### ARTICLE II
### BASE RENT

Tenant shall pay Landlord as Base Rent ("Base Rent"), in lawful money of the United States, at the office of Landlord or to such other person or other place that Landlord may from time to time designate in writing, in accordance with the following schedule:

__$6325.00 5 months then 7356 for balance of 1st year then annual increase as noted__

**EXHIBIT 1**

insurance premiums, including casualty and liability and all additional and other amounts which may become due under this agreement. Each year and every year on the anniversary of this Lease, the base rent shall increase the higher of three percent (3%) or the CPI increase over the preceding year base rent; ~~SEE CHART~~

## BASE RENT SCHEDULE

Tenant shall pay Base Rent in equal consecutive monthly installments on or before the first day of each calendar month during the term hereof, provided, however, that Tenant, upon the execution of this Lease shall pay the first monthly installment of Base Rent. Tenant further agrees to pay Landlord any excise, sales or privilege tax imposed or levied by any government or governmental agency upon Landlord on account of this Lease or the rental paid hereunder. TENANT ALSO AGREES TO PAY FOR INCREASES OF THE REAL ESTATE TAXES OVER TAX YEAR PAYABLE IN (BASE YEAR) AND TO PAY FOR ANY ASSESSMENT REDUCTION COSTS, INCLUDING ATTORNEY'S FEES.

**Past Due Rent and Additional Rent**

It is expressly agreed that all rent and additional payments which are not made within the ten (10) days of their due date shall be subject to a late charge of $100.00 per month until paid. Any monies which Landlord advances on Tenant's behalf under the terms of this Lease or other monies due Landlord by Tenant shall be paid to Landlord with interest at the rate of one and one-half percent (1%) per month from the date on which the obligation to Landlord is incurred to the date of payment. Should a Tenant tender a check or payment of monies due hereunder and said check be returned to Landlord for insufficient funds", a charge of $50.00 may be assessed by the Landlord for each returned check. If the Tenant refuses to pay the above charges, the security deposit may be reduced by the unpaid obligations.

## ARTICLE III
## SECURITY DEPOSIT

In addition to the first monthly installment of Base Rent, Tenant, upon execution of this Lease, has paid to Landlord the sum of $ 14,650.00 (the "Security Deposit") to secure the full and prompt performance by Tenant of all its obligations hereunder. Landlord shall have the right to apply the Security Deposit for the purpose of curing any default on the part of Tenant under any of the terms, covenants and conditions of this Lease. Provided that Tenant is not then in default under this Lease, Landlord shall promptly after the termination of this Lease return to Tenant the Security Deposit or such portion thereof as has not been applied by landlord in accordance with this section, (1) Landlord may apply the Security Deposit to the cost of repairing any damage and shall be entitled to retain a portion of the Security Deposit equal to any delinquent sums due (and

2

late charges therefor) and/or the estimated amount of any contingent obligation of Tenant under the terms of this Lease until such contingent obligation has been satisfied either by payment by Tenant or application by Landlord of the retained portion of the Security Deposit. Landlord shall not pay Tenant interest on the Security Deposit. The Security Deposit shall not be considered the last month's Base Rent.

**Transfer of Security Deposit**

Landlord may deliver the then current balance of the Security Deposit to the purchaser of Landlord's interest in the Premises in the event that such interest be transferred and thereupon Landlord shall be discharged from any further liability with respect to the Security Deposit.

## ARTICLE IV
## USE OF PREMISES

Tenant shall use the Premises solely for the following described purposes:

ANY LEGAL USE

Tenant will not use or permit or suffer the use of the Premises for any other business or purpose. Tenant shall operate its business at such times and hours as Tenant deems appropriate; provided, however, that such hours be at least normal business hours for six (6) days a week. Tenant also specifically covenants and agrees that it, or its subsidiaries or affiliates, shall not open a store or office offering substantially similar merchandise or services within a three (3) mile radius of the Premises. For purposes of this Article, an affiliate is a business in which at least fifty percent (50%) of the ownership are owners, officers, or employees of Tenant.

Tenant agrees to comply with all applicable laws, rules and regulations, including licensing requirements of every governmental body or agency whose authority extends to the Premises or the business of Tenant.

Tenant shall warehouse, store, and/or stock in the Premises only such goods, wares and merchandise as Tenant intends to offer for sale at retail, at, in, from or upon the Premises. Tenant shall use for office, clerical, or other non-selling purposes only such space in the Premises as is from time to time reasonably required for Tenant's business in the Premises.

## ARTICLE V
## TENANT'S PROPORTIONATE SHARE

For purposes of this Lease, "Tenant's Proportionate Share" shall mean 100 % percent, which is the ratio of the area of the Premises to the area of all of the rentable building space in the building. In the event that: the term of this Lease shall begin or end during any period for which Ownership, Taxes and Operating Expenses (as defined herein) are computed, Tenant's Proportionate Share shall be prorated in proportion to the number of days during such period that this Lease is in effect. IT IS TENANT'S SOLE OBLIGATION TO MAINTAIN THE BUILDING AND TO REPLACE OR REPAIR ITEMS WHICH ARE IN NEED OF REPAIR OR REPLACEMENT.

3

## ARTICLE VI
## TAXES

Tenant shall pay Landlord as additional rent simultaneously with the payment of each month's installment of Base Rent, one-twelfth (1/12th) of Tenant's Proportionate Share of Taxes (as defined herein). Taxes shall be reasonably estimated by Landlord on the basis of one hundred percent (100%) of the most recently ascertainable tax bill or notice of assessment. Landlord shall give Tenant written notices of changes in the Taxes due. Taxes shall be defined as all real and personal property taxes and assessments which are levied, assessed or imposed upon the building, or which become a lien upon the building and the realty of which it is a part during any calendar year during the term of this Lease, and any accounting, consulting or legal fees incurred by Landlord in contesting or protesting the Taxes. Landlord shall pay when due Tenant's Proportionate Share of the Taxes out of such deposits, provided that if such deposits are insufficient to pay in full Tenant's Proportionate Share of the Taxes, Tenant shall pay to Landlord the amount of such deficiency within ten (10) days after receipt of an invoice therefor from Landlord.

**Final Tax Statement**

Within ten (10) days after the termination date, or the termination of this Lease for any reason other than the expiration of the stated term, Landlord shall deliver to Tenant a statement (the "Final Tax Statement") of Tenant's Proportionate Share of the Taxes, as reasonably estimated by Landlord, which have been or may be assessed, levied or imposed during the calendar year immediately prior thereto (if such taxes are still unpaid). If Tenant's obligation, as stated in such Final Tax Statement, shall exceed the amount held by Landlord as deposits toward the payment of Tenant's Proportionate Share of Taxes pursuant to this Article VI of this Lease, and after the deduction of the Security Deposit held pursuant to Article III of this Lease, Tenant shall pay to Landlord, within thirty (30) days after receipt of the Final Tax Statement, an amount equal to such excess. If the amount of such deposits shall exceed Tenant's obligation as stated in such Final Tax Statement, Landlord shall refund such excess to Tenant within thirty (30) days after delivery of the Final Tax Statement. The Final Tax Statement shall constitute the final determination of Tenant's obligations with respect to Ownership Taxes, provided that Landlord's and Tenant's obligations to pay any amount required by this Section shall survive the expiration or termination of this Lease.

## ARTICLE VII
## TENANT IMPROVEMENTS

Subject to Landlord's prior approval of the basic plans and specifications therefore, Tenant, at Tenant's sole cost and expense, shall be responsible for all carpentry, plumbing, electrical and decoration work necessary for the operation of Tenant's business. Thereafter, Tenant is given the right and privilege to make any changes or

4

alterations necessary for the conduct of Tenant's business, provided no structural or exterior changes, being by example and not limited to, door or window openings, load bearing walls, roof, etc., shall be made without Landlord's prior written consent. Tenant shall deposit with Landlord, full waivers of lien for all labor, materials and supplies involved within seven (7) days of substantial completion of said work. Tenant shall not incur any mechanic's or materialmen's liens to be filed against the Premises. If such a lien shall be filed, Tenant shall cause the same to be discharged of record within ten (10) days of notice thereof. If Tenant shall fail to discharge a lien within said period, Landlord may, but shall not be obligated to discharge the lien, in which event all amounts expended by Landlord shall constitute additional rent payable on demand. All of Tenant's work shall be done in accordance with all applicable statutes, ordinances, regulations and codes. Tenant shall provide Landlord copies of any conditional Sales Agreement or leases relating to improvements installed by Tenant (including signs).

All Tenant improvements (except trade fixtures) shall become the property of Landlord upon the expiration of the term of this Lease; provided, however, that Landlord may by written notice given not less than thirty (30) days prior to the expiration of the term direct that all Tenant improvements be removed by the Tenant prior to the termination of this Lease. In such event Tenant shall repair any damage or injury to the Premises caused by such removal.

## ARTICLE VIII
## SIGNS

If Tenant shall erect a sign on the Premises, the sign shall conform to the Landlord's sign policy standards and to all governmental codes and laws regulating such signs. Tenant shall design its sign and submit it to Landlord for approval prior to construction, and Landlord shall, within ten (10) days, approve the design or specify changes to be made. Tenant agrees not to erect any other signs or advertisements on the Premises without the Landlord's prior written consent. Prior to its installation, Tenant shall provide Landlord with a copy of the executed sign permit from the governmental unit regulating signs.

In the event said sign is located on or attached to the roof or mansard of the Premises, Tenant shall erect the sign in good and workmanlike manner using pitch pockets at the point of contact. Tenant shall be responsible for the repair and maintenance of the sign, and of any leaks or other damage to the roof which are traceable to the installation or maintenance of said sign. Tenant agrees to notify Landlord when said installation is completed and to specify any opening made in the roof in the course of installation or at any other time so that Landlord's roofer may be called to install pitch pane and patch with hot roofing tar or to flash or counterflash, all at Tenant's cost and expense. Tenant shall also be responsible for the cost of any bond premium to maintain the bond or guarantee on the roof due to the sign's installation.

5

## ARTICLE IX
## INSURANCE AND INDEMNITY

Tenant agrees to save Landlord, Landlord's beneficiaries and agents and their respective successors and assigns harmless and indemnified from all injury, loss, claims or damage to any person or property while on or about the Premises occasioned by an act or omission of Tenant, or anyone claiming by, through or under Tenant; to maintain in responsible companies approved by Landlord, public liability insurance, insuring Landlord, Landlord's beneficiaries and agents, as their interests may appear, against all claims, demands, or actions for injury to or death of any one (1) person in an amount of not less than $1,000,000.00 and for injury to or death of more than one (1) person in any one (1) accident in an amount of not less than $2,000,000.00 and for damage to property in an amount of not less than $500,000.00 made by or on behalf of any person, firm or corporation, arising from, related to or connected with the conduct and operation of Tenant's business in the Premises. Landlord shall have the right to direct Tenant to increase said amounts whenever it considers them inadequate and, in addition, and in like amounts, covering Tenant's contractual liability under the aforesaid hold harmless clause. EVERY FIVE (5) YEARS, INSURANCE LIMITS FOR PERSONAL INJURY SHALL BE INCREASED BY $500,000.00.

Tenant shall carry like coverage against loss or damage by boiler or compressor or internal explosion of boilers or compressors, if there is a compressor in the Leased Premises; maintain plate glass insurance and all risk contents insurance with such extended coverage endorsements as Landlord may from time to time require covering all of Tenant's stock in trade, fixtures, furniture, furnishings, floor coverings installed by Tenant, and equipment in the Premises to the extent of at least eighty percent (80%) of their replacement cost.

All of said insurance shall be responsible companies satisfactory to Landlord and shall provide that it will not be subject to cancellation, termination or change, except after at least thirty (30) days prior written notice to Landlord.

The policies or duly executed certificates for the same (which certificates shall evidence the insurance waiver of subrogation) together with satisfactory evidence of the payment of the premium thereon, shall be deposited with Landlord on the earlier of the date Tenant takes possession of the Premises or the date Tenant begins Tenant's work, and upon renewals of such policies, not less than thirty (30) days prior to the expiration of the term of such coverage; and that if Tenant fails to comply with such requirements, Landlord may obtain such insurance and keep the same in effect and Tenant shall pay Landlord the premium cost thereof upon demand. Each such payment shall constitute additional rent payable by Tenant under this Lease, and Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep in force insurance as aforesaid, to the amount of insurance premium or premiums not paid or incurred by Tenant and which would have been payable upon such insurance, but Landlord, in addition to any and all other rights and remedies provided Landlord under the terms of this Lease, shall also be

6

entitled to recover as damages for such breach the uninsured amounts of any loss, to the extent of any deficiency in the insurance required by the provisions of this Lease.

Notwithstanding the foregoing, whenever any loss, cost, damage or expense resulting from fire, explosion or any other casualty is incurred by either of the parties to this Lease in connection with the Premises, and such party is then covered in whole or in part by insurance with respect to such loss, cost, damage, or expense, then the party so insured hereby releases the other party from any liability it may have on account of such loss, cost, damage or expense to the right of subrogation, which might otherwise exist in or accrue to any person on account thereof, provided that such release of liability and waiver of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage or increase the cost thereof (provided that in the case of increased cost the other party shall have the right, within thirty (30) days following written notice, to pay such increased cost, thereupon keeping such release and waiver in full force and effect.

**Tenant's Personal Property**

Landlord shall have no responsibility to insure the personal (equipment, fixture and inventory) property of Tenant of whatever nature and wherever located on the Premises against any loss or damage thereto however occasioned, it being understood and agreed that Tenant will so insure such personal property or self-insure, whichever Tenant elects to do.

## ARTICLE X
## OPTION TO EXTEND LEASE

Landlord hereby agrees that upon the expiration of the initial term, and provided Lessee is not in default under the provisions of this Lease, Lessee may extend this Lease for an additional five (5) year period. Thereafter, Lessee is given the option to so extend for another and new five (5) years after the first five (5) year extension. Any such extension or extensions shall be upon the same terms, warranties, covenants, provisions and conditions as provided in this Lease. Exercise of any option by Lessee shall be performed by giving Landlord written notice thereof by certified mail return receipt requested no less than six (6) months prior to the beginning of such period of extension. Upon such exercise, this Lease shall be deemed to be extended without the execution of any further lease or instrument.

## ARTICLE XI
## EMINENT DOMAIN

If the whole of the Premises shall be taken or condemned (or sold in lieu thereof) by any public authority for any public, quasi-public use or purpose, the term of this Lease

shall end upon, and not before, the date when the possession of the part so taken shall be required for such use or purpose. Current rent shall be apportioned as of the date of such termination.

In the event of any condemnation or taking as aforesaid, Tenant shall not be entitled to any part of the award paid for such condemnation, and Tenant expressly waives any claims or rights to any compensation for the value of the unexpired portion of the Lease. Tenant shall have the right to claim and recover directly from the condemning authority such separate compensation as may be awarded to Tenant on account of any cost or loss to Tenant's business, including moving expenses, merchandise, fixtures, leasehold improvements and equipment.

## ARTICLE XII
## ASSIGNMENT AND SUBLETTING

Tenant will not assign this Lease in whole or in part, nor sublet all or any part of the Premises, without the prior written consent of Landlord in each instance. The consent by Landlord to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. This prohibition against assigning or subletting shall be construed to include a prohibition against any assignment or subletting by operation of law. A possible reduction in the percentage rent to be paid hereunder or a proposed assignment or subletting to a business offering substantially similar services or merchandise to those already offered in the building shall constitute reasonable grounds for denying consent. If this Lease be assigned, of if the Premises or any part thereof be sublet or occupied by anybody other than Tenant, Landlord may collect rent from the assignee, sub-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, sub-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. Notwithstanding any assignment or sublease, Tenant shall remain fully liable on this Lease and shall not be released from performing any of the terms, covenants and conditions of this Lease. In the event that Landlord is requested to review and subsequently approves an assignment or sublease, Tenant shall pay Landlord a transfer fee of $500.00.

**Change in Corporate Ownership**

If at any time during the term of this Lease any part or all of the corporate shares of Tenant shall be transferred by sale, assignment, bequest, inheritance, operation of law or other disposition so as to result in a change in the present effective voting control of Tenant by the person or persons owning a majority of said corporate shares on the date of this Lease, Tenant shall promptly notify Landlord in writing of such change, and Landlord may terminate this Lease at any time after such change in control by giving Tenant ninety (90) days prior written notice of such termination. ALL NEW ADDITIONAL PARTNERS, SHAREHOLDERS OR OWNERS SHALL SIGN THIS LEASE, INDIVIDUALLY.

8

**Concessions**

Tenant shall not permit any business to be operated in or from the Premises by any concessionaire or licensee without the prior written consent of Landlord.

## ARTICLE XIII
## LANDLORD'S REMEDIES

If default shall be made in the payment of the rent hereunder or in the payment of any other sum required to be paid by Tenant under this Lease or under the terms of any other agreement between Landlord and Tenant and such default shall continue for five (5) or more days after the same to be due and payable, or if default shall be made in the observance or performance of any of the other covenants or conditions in this Lease which Tenant is required to observe and perform and such default shall continue for ten (10) days or more after notice to Tenant, or if a default involves a hazardous condition and is not cured by Tenant immediately upon notice to Tenant, or if the interest of the Tenant in this Lease shall be levied on or under execution or other legal process, or if any voluntary petition to bankruptcy or for corporate reorganization or any similar relief shall be filed by Tenant, or if any involuntary petition in bankruptcy shall be filed against Tenant under federal or state bankruptcy or insolvency act and shall not have been dismissed within sixty (60) days from the filing thereof, or if a receiver shall be appointed for Tenant or any of the property of Tenant by any court and such receiver shall not have been dismissed within sixty (60) days from the date of his appointment, or if Tenant shall make an assignment for the benefit of creditors, or if Tenant shall admit in writing Tenant's inability to meet Tenant's debts as they mature, or if Tenant shall abandon or vacate the Premises during the term hereof, then, except as otherwise provided by law, Landlord may treat the occurrence of any one or more if the foregoing events as a breach of the Lease, and thereupon at its option may, with or without any additional notice or demand of any kind to Tenant or any other person, have anyone or more of the following described remedies provided at law or in equity or elsewhere herein:

(a) Landlord may terminate only Tenant's right of possession and may repossess the Premises by forcible entry and detainer suit, by taking peaceful possession or otherwise, without any additional demand or notice of any kind to Tenant and without terminating this Lease, in which event Landlord may, but shall be under no obligation to relet the same for the account of Tenant, for such rent and upon such terms as shall be satisfactory to Landlord. For the purposes of such reletting, Landlord is authorized to make any decoration, repairs, changes, alterations or additions, in or to the Premises, that may be necessary or convenient. If Landlord shall fail to relet the Premises, Tenant shall pay to Landlord as damages a sum equal to the amount of the rental reserved in this Lease for the balance of the term hereof. If the Premises are relet, and a sufficient sum shall not be realized from such reletting after paying all of the costs and expenses of such decorations, repairs, changes, alterations and additions and the expenses of such reletting and the collection of the rent accruing therefrom to satisfy the rent provided for in this Lease, Tenant shall satisfy and pay any such deficiency upon demand. Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this Section

from time to time and that no suit or recovery of any portion due Landlord hereunder shall be any defense to any subsequent action brought for any amount not theretofore reduced to judgment in favor of Landlord. No such reentry or taking possession of the Premises by Landlord shall be construed as an election on its part to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for any breach, and in addition to any other remedies it may have, it may recover from Tenant all damages it may incur by reason of such breach, including the cost of recovering the Premises, and including the worth at the time of such termination of the excess, if any, of the amount of rent reserved in this Lease for the remainder of the stated term over the then reasonable rental value of the Premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from Tenant to Landlord.

(b) In the event Landlord repossesses the Premises as provided, Landlord may remove all person and property from the Premises and store such property at the cost of Tenant, without liability for damage.

In determining the rent which would be payable by Tenant hereunder subsequent to default, the annual rent for each year of the unexpired term, shall be equal to the sum of the average Percentage Rent paid by Tenant from the commencement date to the time of default or during the preceding two (2) calendar years, whichever period is shorter, and the minimum rent payable for such year of the unexpired term.

**Expenses of Enforcement**

Tenant shall pay upon demand all Landlord's costs, charges and expenses including the reasonable fees of attorneys, agents and others retained by Landlord incurred in enforcing Tenant's obligations hereunder or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord to become involved or concerned, without Landlord's fault.

**Right of Landlord to Perform**

All covenants and agreements to be performed by Tenant under any of the terms of this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any abatement of rent. If Tenant shall fail to pay any sum of money, other than rent, required to be paid by it hereunder, or shall fail to perform any other act on its part to be performed hereunder, and such failure shall continue for ten (10) days or more after notice thereof by Landlord (except that no such notice shall be required in the event that Landlord deems it necessary to take action without such notice in order to protect its interests), Landlord may, but shall not be obligated so to do, and without waiving or releasing Tenant from any obligations of Tenant, make any such payment or perform any such other action Tenant's part to be made or performed as in this Lease provided. All sums so paid by Landlord and all necessary incidental costs, together with interest thereon as provided in this Lease, shall be payable to Landlord on demand, and Tenant

10

covenants to pay any such sums, and, in addition to any other right or remedy of Landlord, Landlord shall have the same rights and remedies in the event of nonpayment thereof by Tenant as in the case or default by Tenant in the payment of rent.

**Remedies Cumulative**

All remedies herein conferred upon Landlord shall be cumulative and no one exclusive of any other remedy conferred herein or by law. If Tenant is in default, Landlord may prevent removal of property from the Premises by any lawful means it deems necessary to protect its interest.

## ARTICLE XIV
## SUBORDINATION

Tenant agrees to subordinate this Lease to any mortgage or trust deed which may hereafter be placed on the Premises, provided such mortgagee or trustee thereunder shall assure to Tenant the right to possession of the Premises and other rights granted to Tenant herein so long as Tenant is not in default hereunder. Tenant agrees to execute all documents required by Landlord's mortgagee evidencing this agreement within ten (10) days of submission.

## ARTICLE XV
## WAIVER OF CLAIMS

Tenant waives and releases all claims against Landlord, its owners, principals, agents and employees, in respect of, and agrees that they shall have no liability for, injury to person or damage to property sustained by Tenant or any other person occurring in or from any existing or future condition, defect, matter of thing in any part of the building, or from the equipment or any appurtenance thereof becoming out of repair, or from accident or from any occurrence or act, or from the negligence or omission of Tenant or of any other person or from the negligence or omission of Tenant or of any other person (excepting therefrom any damage resulting from the negligence of Landlord, its employees or servants). This Article shall be applicable but not limited to damage caused as aforesaid or by flooding of basements or other sub-surface areas or by refrigerators, sprinkling devices, air-conditioning apparatus, water, snow, frost, steam, excessive heat or cold, failing plaster, broken glass, sewer backup, gas odors or no ice, or the bursting or leaking of pipes or plumbing fixtures. If any damage to the Premises or the building or part thereof, results from a negligent act or omission of Tenant, its agents, employees or invitees, Landlord may, at Landlord's option, repair such damage and Tenant shall, upon demand by Landlord, reimburse Landlord forthwith for all costs of making such repairs in excess of the amounts, if any, paid to Landlord under insurance covering such damages. All property in the building or on the Premises belonging to Tenant, its agents, employees or invitees, or to any occupant of the Premises shall be there at the risk of Tenant and Landlord shall not be liable for damage thereto or theft, misappropriation or loss thereof. Tenant agrees to hold Landlord harmless and indemnified against claims and

11

liability for injuries to all persons and for the damage to, or the theft, misappropriation or loss of all property occurring in or about the Premises, due to act or omission of Tenant, its agents or employees.

## ARTICLE XVI
## LANDLORD'S ACCESS

Landlord or its agents shall have the right to enter the Premises at all reasonable times to examine the same, and to show them to prospective purchasers or lessees of the building, and to make such repairs, alterations, improvements or additions as Landlord may deem necessary or desirable, and Landlord shall be allowed to take all material into and upon said Premises that may be required therefore without the same constituting an eviction of Tenant in whole or in part and the rent reserved shall in no way abate while said repairs, alterations, improvements, or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise. During the four (4) months prior to the expiration of the term of this Lease or any renewal term, Landlord may exhibit the Premises to prospective tenants or purchasers, and place upon the Premises the usual "To Let" or "For Sale" notices.

## ARTICLE XVII
## COVENANT OF QUIET ENJOYMENT

Landlord covenants and agrees that at all times when Tenant is not in default under the terms of this Lease, Tenant's quiet and peaceful enjoyment of the Premises shall not be disturbed or interfered with by Landlord or by any person claiming by, through or under Landlord.

## ARTICLE XVIII
## SURRENDER OF PREMISES

Upon the termination of this Lease, Tenant shall remove its Tenant improvements unwanted by LANDLORD and shall surrender the Premises in the same condition as the Premises were in upon deli very of possession to Tenant, reasonable wear and tear, and damage by unavoidable casualty, excepted. Tenant shall surrender all keys for the Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combination on locks, safes and vault, if any, in the Premises. In the event Tenant has not removed its tenant improvements at the time of termination of this Lease, said improvements shall be deemed abandoned and Landlord shall be entitled to retain such of the improvements, as it so elects. The balance of such improvements, if any, must still be removed by Tenant; provided, however, that Landlord may remove and store the same, all at the expense of Tenant. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this Lease.

## ARTICLE XIX
## HOLDING OVER

If the Tenant retains possession of the premises or any part thereof after the termination of the term by the lapse of time or otherwise, then the Landlord may at its option within thirty (30) days after the termination of the term serve written notice upon Tenant that such holding over constitutes either (a) renewal of this lease for one (1) year and from year to year thereafter, at double the rental specified herein for such period, or (b) creation of a month-to month tenancy, upon the terms of this Lease except at double the monthly rental or (c) creation of a tenancy at sufferance, at a rental of double the per diem rental last paid per day for the time Tenant remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Tenant shall also pay to Landlord all damages resulting from retention of possession by Tenant.

## ARTICLE XX
## NOTICE OR DEMANDS

All notices to or demands upon a party hereto, desired or required to be given under any of the provisions hereof, shall be in writing and sent United States registered or certified mail, to the respective parties at the following addresses:

Landlord: CCS CHICAGO RECREATION INC
S BROWN PRESIDENT
848 DODGE UNIT 221
EVANSTON IL 60202

Tenant: TRACEY BROOKS
GOLD COAST PARTNERS LLC
1415 N. DEARBORN #16A
CHICAGO IL 60610

or at such other address as either party hereto may have furnished by written notice thereof to the other party hereto. The effective date of such notice shall be three (3) days after delivery of the same to the United States Post Office for mailing.




13

## ARTICLE XXI
## UTILITIES

**Utility Charges**

All utility accounts shall be placed in Tenant's name upon the earlier of Tenant's taking possession of the Premises or the commencement of this Lease. Tenant shall pay when due to the applicable utility company or private contractor all charges for gas, electricity, heat, telephone or other communication service, scavenger and janitorial service and all other utility services used in or supplied to the Premises. The cost of water used in the Premises for any other purpose shall be billed to Tenant by Landlord at a rate reasonably set by Landlord and shall be payable by Tenant to Landlord within ten (10) days after receipt of an invoice therefor, provided, however, that if Landlord determines Tenant is a heavy-user, Tenant shall at its sole cost and expense, install its own water meter and be billed separately. In no event shall Landlord be liable for an interruption or failure in the supply of any such utilities to the Premises. Tenant shall remain responsible for payment of utilities until the end of Lease term.

**Tenant's Maintenance**

Tenant shall, at its own expense, repair and maintain in good order the interior and exterior of the Premises. THE LANDLORD HAS NO RESPONSIBILTY FOR REPAIRS. IT IS SOLELY TENANT'S OBLIGATION.

THE PERMANENT INDEX NUMBERS FOR THE PREMISES ARE:



## ARTICLE XXII
## MISCELLANEOUS

A. The parties hereto acknowledge that this Lease contains all of the agreements between Landlord and Tenant, and that no promises or agreements have been made which are not contained herein. Except as provided herein, no subsequent alteration or amendment of this Lease shall be effective unless agreed in writing by the parties hereto.

B. The captions and Article numbers set forth in this Lease are for convenience only, and in no way define or limit the scope or intent of such Articles of this Lease.

C. This Lease is executed by not personally, but as Agent for the Owner, in the exercise of the power and authority conveyed to it under a Management Agreement with Owner. The terms, provisions, stipulations, covenants and conditions to be performed by are undertaken by them solely as Agent as aforesaid and not individually, and nothing




contained in this Lease shall be construed as to place any personal liability whatsoever against or upon said Agent personally.

D. All of the terms, provisions, stipulations, covenants and conditions hereof shall be binding upon and the benefits inure to the parties hereto and the respective heirs, devisees, personal representatives, successors and assigns, of the parties hereto.

E. The terms "Landlord" and "Tenant" shall include all parties so designated herein, their respective heirs, devisees, personal representatives, successors and assigns. Whenever used herein, the singular number shall include the plural, the plural the singular and the use of any gender shall include all genders.

F. This Lease, and all instruments or documents relating to same and all references herein, shall be construed under Illinois law. The venue of any action or suit brought in connection herewith shall be in the County wherein the Premises are situated.

G. Tenant warrants that it has had no dealings with any estate broker or agent in connection with this Lease other than and covenants to pay, hold harmless and indemnify Landlord from and against any and all cost, expenses or liability (including reasonable attorney's fees) for any compensation, commission, fee or charges claimed by any other broker or other agent with respect to this Lease of the negotiation thereof.

H. Submission of this instrument by Landlord to Tenant for examination or signature by Tenant does not constitute a reservation of or option for the Lease. This instrument becomes effective as a lease only upon execution and delivery by both Landlord and Tenant.

I. The waiver by Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to play the particular rental so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent. No covenant, term or condition of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing by Landlord.

J. No payment by Tenant or receipt by Landlord of a lesser amount than the rent therein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided in this Lease.

K. In any clause, phrase, provision or portion of this Lease or the application thereof to any person or circumstance shall be invalid, or unenforceable under applicable

law, such event shall not affect, impair or render invalid or unenforceable the remainder of this Lease nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof of other persons or circumstances.

L. Tenant shall not record this Lease without the written consent of Landlord; provided, however, that upon the written request of either party hereto, the other party shall execute a Memorandum of Lease in recordable form, incorporating the parties, premises and term hereof.

M. If Tenant shall be a corporation, it shall provide within thirty (30) days after execution of this Lease, a certified copy of a resolution authorizing this Lease. In the event Tenant fails to so provide the certified copy, tenant hereby waives all defenses which might be raised by Tenant thereby, and the parties executing this Lease agree to personally guarantee the performance by Tenant of all covenants contained herein.

## ARTICLE XXIII
## RULES AND REGULATIONS

The following rules and regulations, together with such additional rules and regulations as Landlord may from time to time promulgate by written notice to Tenant, are made a part of this Lease, and a failure to observe them shall constitute a breach of this Lease in the same manner as if the same were contained as covenants:

(a) The outside areas (front, rear, or side) immediately adjoining the Premises shall be kept clean and free from snow, ice, dirt and rubbish by Tenant to the satisfaction of Landlord, and Tenant shall not place or permit any obstructions or merchandise in such areas.

(b) The plumbing facilities shall not be used for any other purpose than that for which they are constructed, and no foreign substance of any kind shall be thrown therein, and the expense of any breakage, stoppage, or damage resulting from a violation of this provision shall be borne by Tenant, who shall, or whose employees, agents or invitees shall have caused it.

## ARTICLE XXIV
## EXCULPATORY CLAUSE

Each and all of the covenants, undertakings and agreements, made in this Lease (and any exhibit or rider hereto) on the part of the Landlord and the Owner, while in the form purporting to be the covenants, undertakings and agreements of said Landlord and Owner, are nevertheless each and every one of them made and intended not as personal covenants, undertakings and agreements by Landlord and Owner or for the purpose or intention of binding said Landlord and Owner, but are made and intended for the purpose

of binding only the interest of the Owner in the building and no personal liability or personal responsibility is assumed by nor shall at any time be asserted or enforceable against Landlord or Owner on account of this Lease or on account of any covenant, undertaking or agreement in this Lease contained, all such personal liability and responsibility, if any, being expressly waived and released.

## ARTICLE XXV
## LEASE GUARANTEE

The undersigned hereby guarantees to Landlord the payment of rent and the performance by Tenant of all of the other covenants contained in this Lease, and shall reimburse the Landlord for all expenses, including attorney's fees, incurred in enforcing this guarantee. The undersigned waives all notice of default, and consents to all extensions of time, settlements, compromise, or amendment of this Lease granted by Landlord to Tenant without modification of this guarantee. This guarantee shall inure to the benefit of the successors and assigns of Landlord, and shall be binding upon the heirs, successors, and assigns of the undersigned.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day first above written.

LANDLORD: _[signature]_ PAVS

CCS CHICAGO RECREATION INC

TENANT: _[signature]_ Personal

Gold Coast Partners, LLC

PERFORMANCE OF THIS LEASE GUARANTEED BY:

_[signature]_

LEASprto.R6 08-23

17