## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| GOLD COAST PARTNERS, LLC | ) Case No. 18-09765 |
| | ) |
| Debtor and Debtor-in-Possession | ) Honorable Timothy A. Barnes |
| | ) |
| | ) Chapter 11 |

### DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

Gold Coast Partners, LLC, Debtor herein ("Debtor"), by and through its attorney, proposes the following Third Amended Plan of Reorganization ("Plan") in accordance with Section 1121(a) of the Bankruptcy Code.

### PREAMBLE

On April 3, 2018, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). The Debtor is operating its business and managing its financial affairs as Debtor-in-Possession pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case. The Debtor is the operator of three (3) coin-operated laundromats in the City of Chicago. The laundromats are operated at 5527 West North Ave., Chicago, IL d/b/a JR Coin Laundry ("North"), 3159 West Roosevelt Rd, Chicago, IL d/b/a/ Fast Wash ("Roosevelt"), and 4258 West Madison St., Chicago, IL d/b/a Spin Cycle on Madison ("Madison", collectively, "Properties"). The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized by the Debtor from post-petition earnings as well as from cash on hand. For a further discussion of the Plan, the reader's attention is directed to the Third Amended Disclosure Statement filed by the Debtor in

connection with this Plan.

## ARTICLE I
## DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1**   **Administrative Expense:**   A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.2**   **Allowed Claim:**   A "Claim" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent in the Debtor's bankruptcy schedules filed in this Chapter 11 case, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

**1.3**   **Bankruptcy Code:**   Title 11 of the United States Code, Section 101 *et seq.*, as amended.

**1.4**   **Bankruptcy Court:**   The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.5**   **Bankruptcy Rules:**   The Federal Rules of Bankruptcy Procedure.

**1.6**   **Chapter 11:**   Chapter 11 of the Bankruptcy Code.

**1.7**   **Chapter 11 Case:**   This case filed by the Debtor pursuant to Chapter 11 of the

2

Bankruptcy Code.

**1.8**   **Claim:**   The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.9**   **Confirmation:**   The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.10**   **Debtor:** Gold Coast Partners, LLC

**1.11**   **Debtor's Estate:**   All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.12**   **Debtor in Possession:** Gold Coast Partners, LLC

**1.13**   **Disclosure Statement:** The Third Amended Disclosure Statement including any amendments or modifications thereto.

**1.14**   **Effective Date:**   Thirty (30) days following the date on which the Order confirming this Plan becomes a Final Order.

**1.15**   **Equity Interests:** The equity interests ("Interests") of the Debtor consist of the membership Interests in the Debtor of Tracey L. Brooks ("Brooks") and Lucher Holloway ("Holloway").

**1.16**   **Final Confirmation Order**: Final Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.17**   **Final Order:**   (i) An order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek re-argument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, re-argument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an

appeal, re-argument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for re-argument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

**1.18**    **Month:**  A calendar month, including the month in which a date or event occurs.

**1.19**    **Plan:**  This Third Amended Plan of Reorganization including any amendments or modifications thereto.

**1.20**    **Pro-rata:**  With respect to any distribution on account of any Claim in the same proportion as the amount of such Claim bears to the aggregate amount of all Claims of its class.

**1.21**    **Unclassified Claims:**  Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined in this Plan, the words and phrases used herein shall have the meanings ascribed to them in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## UNCLASSIFIED CLAIMS

The following Unclassified Claims exist under the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code:

**2.1**    **Administrative Claims:**    Administrative Claims shall consist of Allowed Claims for Administrative Expenses as well as Claims arising under Sections 507(a)(2) and

4

507(a)(3) of the Bankruptcy Code.[1]   On June 11, 2019, an order was entered allowing an administrative expense claim on behalf of the City of Chicago in the amount of $36,007.22.[2]

## ARTICLE III
## CLASSIFICATION OF CLAIMS

**3.1**     **Class 1:**     The Allowed Claims of the Internal Revenue Service ("IRS"), the Illinois Department of Revenue ("IDR"), the Illinois Department of Employment Security ("IDES") and any other federal, state or local taxing authority, other than real estate taxes, which are entitled to priority under Section 507(a)(8) of the Bankruptcy Code ("Priority Claims").

**3.2**     **Class 2**: The Allowed Secured Claim of Alliance Laundry Systems, LLC ("Alliance").

**3.3**     **Class 3**:     The Allowed Secured Claim of Dexter Financial Services, Inc. ("Dexter").

**3.4**     **Class 4**:     The Allowed Secured Claim of City of Chicago, Department of Finance, Bureau of Utility Billing ("Chicago Water").

**3.5**     **Class 5**:     The Allowed Claims of general unsecured creditors ("Unsecured Claims"), including unsecured claims of taxing bodies.

**3.6**     **Class 6**:     The Allowed Secured Claim of Strategic Funding Source, Inc. ("Strategic").

**3.7**     **Class 7**:     The Allowed Interests of the Members of the Debtor, Tracey Brooks Holloway f/k/a Tracey L. Brooks ("Brooks") and Lucher Holloway ("Holloway", collectively "Members").

---

[1] Since the Debtor's Chapter 11 Case was commenced as a voluntary proceeding, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

[2] On June 20, 2019, Constellation NewEnergy-Gas Division, LLC filed an application for allowance of administrative expenses and on June 21, 2019, CCS Chicago Recreation Inc. filed a motion for allowance of administrative expenses. The application and motion have yet to be adjudicated by the Court.

**ARTICLE IV**
**PAYMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN**

Under the terms of the Plan, Unclassified Claims are unimpaired and shall be paid as follows:

**4.1**   **Administrative Claims**:   Except as expressly provided herein and except as may be agreed to by the holder of each Allowed Administrative Claim, holders of Allowed Administrative Claims shall be paid on the Effective Date in cash in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, as follows, unless the holder of an Administrative Claim agrees to a different treatment:

Each holder of an Allowed Administrative Claim of the kind specified in Section 507(a)(2) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, on the Effective Date except that post-petition creditors of the Debtor will be paid according to the terms under which the debt was incurred; and provided, however, that all Administrative Claims with respect to the payment of any professional person shall remain subject to and be paid in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules and the Final Order of the Bankruptcy Court.

On June 11, 2019, an order was entered allowing an administrative expense claim on behalf of the City of Chicago in the amount of $36,007.22 for post-petition water charges.   Of that amount, $2,443.94, was incurred for water charges at the Madison location; $11,346.18, was incurred for water charges at the North location; and $22,217.10, was incurred for water charges at the Roosevelt location.   The Debtor and the City of Chicago have entered into a repayment agreement

6

relative to the water charges at the Roosevelt location whereby the Debtor will retire the
outstanding post-petition water charges at that location in the amount of $22,217.10, by paying to
the City of Chicago the sum of $971.12 commencing June 10, 2019, and continuing each month
thereafter until paid in full.   The Debtor intends to negotiate a repayment agreement with the City
of Chicago for the water charges incurred at the Madison and North locations.   If unable to do so,
the Debtor will need to pay the administrative expense claim on the Effective Date of the Plan.

On June 20, 2019, Constellation NewEnergy-Gas Division, LLC filed an application for
allowance of administrative expenses in the amount of $14,374.32, which is set for presentation on
July 10, 2019.   The Debtor is still investigating this claim.   On June 21, 2019, CCS Chicago
Recreation Inc. filed a motion for allowance of administrative expenses in the amount of
$36,007.22, which is set for presentation on July 10, 2019.   The Debtor believes this motion is
without merit and will file its response objecting to the allowance requested.

### ARTICLE V
### TREATMENT OF CLAIMS AND INTERESTS
### IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 1 through 6 are
impaired. Class 7 is not impaired, but not entitled to vote as equity interest holders.

**5.1 Class 1**:   In full satisfaction, settlement, release, and discharge of and in
exchange for the Allowed Claims in Class 1, the Priority Claims shall be paid in full, with interest
at the rate of 5.00% per annum, in monthly payments over sixty (60) months from the Petition
Date, beginning thirty (30) days after the Effective Date. This Class is impaired under the Plan.
The total amount of the Priority Claims is $7,353.63 ($6,875.69 to IRS and $477.94 to IDES).
The monthly payment will be $179.55.

7

**5.2 Class 2**:   In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Secured Claim in Class 2, Alliance shall be paid $600,240.95[3],

with interest at the rate of 7.24% per annum, in monthly installments over a period of ninety-six

(96) months from the Effective Date, commencing thirty (30) days after the Effective Date.   The

monthly payment will be $8,255.00.   These payments will satisfy Alliance's lien on the Debtor's

assets scheduled in the Petition and Alliance shall release its lien on the assets upon completion of

the payments or upon sale of the assets to which the lien may attach, whichever may occur earlier.

This Class is impaired under the Plan.

**5.3 Class 3:**   In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Secured Claim in Class 3, Dexter shall be paid $120,055.59, with

interest at the rate of 6.49% per annum, in monthly installments over a period of seventy-five (75)

months from the Effective Date, commencing thirty (30) days after the Effective Date.   The

monthly payment will be $1,958.14.   These payments will satisfy Dexter's lien on the Debtor's

assets scheduled in the Petition and Dexter shall release its lien on the assets upon completion of

the payments or upon sale of the assets to which the lien may attach, whichever may occur earlier.

This Class is impaired under the Plan.

**5.4 Class 4:**   In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Secured Claim in Class 4, Chicago Water shall be paid

$63,261.53, with interest at the rate of 5.00% per annum, in monthly installments over a period of

sixty (60) months from the Effective Date, commencing thirty (30) days after the Effective Date.

The monthly payment will be $1,194.00.   These payments will satisfy Chicago Water's lien on

---

[3] This is the amount of Alliance's claim as of the Petition Date.   During the course of these proceedings, the Debtor
has been making adequate protection payments to Alliance pursuant to Court order.   The amount of Alliance's claim,
as of the Effective Date, will be less than the amount stated herein and, accordingly, the monthly payment reflected
herein should be reduced.

the Properties in which the Debtor operates its businesses. Upon full payment of Chicago Water's

claims in Class 4, Chicago Water shall release its lien on the Properties or upon sale of the

Properties to which the lien may attach, whichever may occur earlier. This Class is impaired under

the Plan.

     **5.5 Class 5:**    In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Unsecured Claims in Class 5, Unsecured Claims shall be paid,

pro-rata, ten (10%) percent of the Allowed Unsecured Claims, with no interest, in monthly

installments over a period of sixty (60) months commencing thirty (30) days after the Effective

Date. The total amount of Allowed Unsecured Claims is derived from a review of Schedule F filed

by the Debtor and the claims register.   The total amount of Allowed Unsecured Claims is

$196,284.06, including the unsecured amount of the IRS claim. The total amount to be paid

pursuant to the Plan is $19,628.41.   The monthly payment will be $327.14.   This Class is

impaired under the Plan.

     **5.6 Class 6:**   In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Secured Claim in Class 6, Strategic shall be paid $59,196.82[4],

with interest at the rate of 6.00% per annum, in monthly installments over a period of sixty (60)

months from the Effective Date, commencing thirty (30) days after the Effective Date.   The

monthly payment will be $1,224.02.   Strategic is taking the position that its claim is over-secured

and, therefore, entitled to reimbursement of legal fees and expenses in accordance with the loan

documents.   While negotiations between Strategic and the Debtor are ongoing, no agreement has

been reached at the date of filing this Plan.   Accordingly, the amount of Strategic's claim and the

monthly payment necessary to retire the claim may change at the date of confirmation of the Plan.

---

[4] This is the amount of Strategic's claim as of the Petition Date.   It is anticipated that at the Effective Date, Strategic's
claim will be $63,313.03.

9

The payments provided herein, by agreement of the parties, or as ordered by the Court at a later date, will satisfy Strategic's lien on the Debtor's assets scheduled in the Petition and Strategic shall release its lien on the assets upon completion of the payments or upon sale of the assets to which the lien may attach, whichever may occur earlier. This Class is impaired under the Plan.

       **5.7 Class 7:**    Subject to the express provisions of this Plan, the Members shall retain their Interests in the Debtor after Confirmation of the Plan, in exchange for a new value contribution of $2,500.00 each, to be paid in monthly installments over thirty-six (36) months commencing the month following the Effective Date. The Debtor shall offer for sale the Members' Interests by advertising in a newspaper of general circulation that the Interests are for sale. Assuming no interested buyers come forward, then the Members shall contribute new value as referenced herein for the retention of their Interests. Brooks holds a ninety (90%) percent Interest in the Debtor and Holloway holds a ten (10%) percent Interest in the Debtor.

       In addition to the foregoing, in the event the Debtor, Brooks or Holloway are entitled to any recovery from KMAK, LLC in connection with the litigation referenced in the Disclosure Statement, then the recovery will be apportioned between the Debtor, Brooks and Holloway and the recovery by the Debtor will be an additional distribution to Allowed Unsecured Claims.

### ARTICLE VI
### IMPLEMENTATION OF PLAN

       **6.1**    The Debtor intends to continue operating its business to earn income from post-petition earnings sufficient to make the Plan payments.

       **6.2**    Upon Confirmation, the Debtor shall be vested with its assets, subject only to the terms and conditions of this Plan.   The Debtor shall be entitled to continue to operate and manage its financial affairs without further Order of this Court as set forth in the Plan.

10

**6.3**     Notwithstanding Confirmation, an injunction under Sections 362 and 524 of the Bankruptcy Code shall remain in effect to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan.   This injunction shall remain in full force and effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan or until further order of Court. The provisions contained herein are applicable so long as the Debtor is in full compliance with the provisions of any confirmed Plan.

**6.4**     Management of the Debtor will remain unchanged after Confirmation of the Plan and Brooks shall be the disbursing agent for the payments required under the Plan.

**6.5**     After Confirmation of the Plan, the Debtor will operate its business in the ordinary course.   Payments to creditors pursuant to the Plan will be made from funds realized from post-petition earnings, from existing cash deposits, and cash resources of the Debtor.

**6.6**     The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty.

**6.7**     The Plan is self-executing.   Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim.   The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property.   Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

11

**6.8**     Quarterly payments to the U.S. Trustee will continue to be

made by the Debtor until the Case is converted, dismissed or closed.

## ARTICLE VII
## EXECUTORY CONTRACTS

**7.1**     Any executory contracts or unexpired leases not previously

assumed shall be rejected.

On August 7, 2015, the Debtor entered into a lease with Madison & Kildare, LLC to lease

Madison. The term of the lease commenced October 1, 2015, and ends September 30, 2020, with

an option to extend the lease term for two additional five year terms. The current base rent is

$7,500.00 per month.

On November 17, 2015, the Debtor entered into a commercial lease agreement with

5527 North Ave., LLC to lease North. The term of the lease commenced November 22, 2015, and

ends on November 30, 2020, with an option to extend the lease term for an additional five years.

The base rent is $8,266.00 per month.

On February 19, 2016, the Debtor entered into a commercial lease with CCS Chicago

Recreation, Inc. to lease Roosevelt. The term of the lease commenced February 11, 2016, and

ends February 10, 2026, with an option to extend the lease term for two additional five year terms.

The current base rent is $7,803.00 per month.

The Debtor obtained authority from the Court to assume the lease on Roosevelt on October

4, 2018. The pre-petition arrearage due the landlord on the Roosevelt lease has been paid in full.

The Debtor also obtained authority from the Court to assume the leases on Madison and North and

the pre-petition arrearages due the landlords on the Madison and North leases are being paid in

accordance with the order authorizing the assumption.

12

## ARTICLE VIII
## BANKRUPTCY COURT'S RETENTION OF
## JURISDICTION

**8.1**          The Bankruptcy Court shall retain jurisdiction after

Confirmation to: (i) hear and determine applications for fees and allowances for professional

persons; (ii) supervise the implementation of this Plan; (iii) hear and determine objections to

Claims filed in this Chapter 11 case; (iv) resolve disputes regarding interpretation of this Plan; (v)

allow Administrative Claims; (vi) enter Orders to further consummation of the Plan; (vii) approve

modification of the Plan upon motions brought before the Bankruptcy Court in accordance with

Section 1127 of the Bankruptcy Code; (viii) hear and determine all applications and motions

pending before the Bankruptcy Court on the date of Confirmation or such other matters as are

commenced after Confirmation of the Plan; (ix) enter any order, including injunctions, necessary

to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms

and conditions of such title, rights and powers as may be necessary; (x) enforce terms of Plan; (xi)

hear and determine all matters brought by the Debtor under this Plan; (xii) enter an Order

concluding and terminating this Chapter 11 case; and (xiii) hear and   determine any and all

matters brought before the Bankruptcy Court by the Debtor after Confirmation.

## ARTICLE IX
## INVALIDATION OF LIENS AND DISCHARGE

**9.1**     The provisions of the confirmed Plan shall bind all creditors and

other parties in interest, whether or not such persons accept the Plan.   The property owned by the

Debtor at the date of filing of the Chapter 11 Case, which stands as collateral for the Allowed

Secured Claim, shall remain subject to the liens until such time as the amount of the Allowed

Secured Claim has been fully satisfied.   Subject to the provisions contained herein, the

distributions provided under the Plan shall be in exchange for and in complete satisfaction and

release of all liens and Claims against any of the assets or properties of the Debtor and Debtor's

Estate.   Except as stated herein or in the Confirmation Order, on and after Confirmation, all

holders of Claims shall be precluded from asserting any lien or Claim against the Debtor or its

property.   Except as otherwise provided in the Plan or the Confirmation Order, the

Confirmation of the Plan shall, as of the Effective Date: discharge the Debtor from all Claims,

demands, liabilities, other debts and Interests that arose on or before the Petition Date, and all

debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or

not (A) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed pursuant

to Section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is

allowed pursuant to Section 502 of the Bankruptcy Code, or (C) the holder of a Claim or Interest

based on such debt or Interest has accepted the Plan.   This provision of the Plan is intended to

include the full breadth of the discharge provided for and permitted under Section 1141 of the

Bankruptcy Code.

## ARTICLE X
## INTEREST AND PENALTIES

**10.1**   Except as otherwise provided herein, or required by the Bankruptcy Code,

no interest or penalties accruing on or after April 3, 2018, shall be paid on any Allowed Claim nor

shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or

penalty allowed for payment pursuant to the Plan.

14

## ARTICLE XI
## CONFIRMATION OF PLAN UNDER
## SECTION 1129(b) OF THE BANKRUPTCY CODE

**11.1**   To the extent necessary pursuant to Section 1129(b) of the Bankruptcy

Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable

requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

As described in Section 5.7 hereof, Brooks and Holloway will contribute the sum of $2,500 to

purchase their Interests in the Debtor.   The Debtor will offer the Members' Interests for sale by

publishing in the Chicago Sun-Times an advertisement for the purchase of the Members' Interests.

The Debtor expressly reserves all of its rights with respect to such a sale, including the right to

amend this Plan.

## ARTICLE XII
## UNCLAIMED PROPERTY

**12.1**   In the event that any distribution made to a claimant by the Debtor under

this Plan remains unclaimed sixty (60) days after such distribution is made, this distribution shall

become property of the Debtor and shall not be recouped by any claimant in subsequent

distributions.   Once the distribution becomes unclaimed under this provision of the Plan, the

claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds

thereof.

## ARTICLE XIII
## GENERAL PROVISIONS

**13.1**   **Rules of Construction**.   The rules of construction applicable to the Bankruptcy

Code and the Bankruptcy Rules are applicable to this Plan.

**13.2**   **Definitions**.   A term used in the Plan that is not defined in the Plan but that is

used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**13.3     Amendment and Modification**.   The Debtor may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**13.4     Severability**.   Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**13.5     Successors and Assigns**.   The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of any such person or entity.

**13.6     Headings**.   The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**13.7     Effect of Appeals**.   Unless the Confirmation Order is stayed pending appeal, the Debtors may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**13.8     Debtor's Corporate Existence.**   The Debtor's corporate existence shall survive and be unaffected by Confirmation of this Plan except to the extent provided in the Plan.

**13.9     Computation of Time**.   Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**13.10     Insurance Preservation**.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

**13.11     Assignment of Licenses and Insurance**.  Any and all licenses of the Debtor and any and all insurance policies, contracts, rights and coverages shall be deemed assigned to and for the benefit of the Debtor upon Confirmation of the Plan

**13.12     Terms Binding**.  On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtors, all creditors and shareholders and all other entities that are affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of the Final Confirmation Order.

**13.13     Inconsistencies**.  In the event that there is any inconsistency between the Plan and Disclosure Statement, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

**13.14     Compliance With Applicable Law**.  It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws and any rules and regulations promulgated thereunder.  If the Debtor concludes that the Plan may not comply with applicable law, then in such event the Debtor intends to amend the Plan in such respect as it deems necessary to bring the Plan into compliance therewith.

**13.15     Tax Consequences**.  At this time, it is uncertain as to what tax consequences, if any, may exist under the Plan with respect to the Debtor and its creditors.

17

Respectfully submitted,

Gold Coast Partners, LLC,
Debtor/Debtor-in-Possession


By: /s/ Joel A. Schechter
      Its Attorney



Joel A. Schechter
Attorney No. 3122099
Law Offices of Joel A. Schechter
53 West Jackson Blvd., Suite 1522
Chicago, IL 60604
312-332-0267